## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re  MICHELE L. AMES, | : | Chapter 13 |
| | : | |
| Debtor | : | Bky. No. 21-12125 ELF |
| | : | |

# O P I N I O N

## I.  INTRODUCTION

As I observed in one of the first opinions I wrote after my appointment to the bench in 2006,

> a bankruptcy judge is obliged, from time to time, to decide whether a debtor is seeking to abuse the spirit of the Bankruptcy Code and is acting in bad faith. . . . As one court has observed, an issue of this type unavoidably involves the bankruptcy court in difficult value judgments. It's an unpleasant job, but someone has to do it.  That "someone" is the bankruptcy judge.

In re Glunk, 342 B.R. 717, 720 (Bankr. E.D. Pa. 2006) (quotations and citation omitted) (quotation modified slightly).

The case presently before the court illustrates that the above statement remains true.

Debtor Michele L. Ames ("the Debtor") commenced this chapter 13 bankruptcy case on July 30, 2021. In her amended Schedule E/F, she has listed approximately $98,000.00 in unsecured debt.  The largest scheduled debt is for approximately $90,000.00, owed to her estranged husband, Guy Alexander Ames ("Mr. Ames").  This debt arises from the parties' pending divorce case.  The approximate $8,000.00 balance of the debt in Schedule E/F is for medical bills owed to a single provider.  The Debtor's proposed First Amended Chapter 13 Plan (Doc. # 47) projects a distribution to general unsecured creditors of $2,358.72.

1

Mr. Ames has objected to confirmation of the Debtor's plan on the grounds that neither the bankruptcy case nor the plan was filed in good faith. See 11 U.S.C. §1325(a)(3) and (7). In support of this objection, he points to the Debtor's dissipation of a marital asset during the pendency of the divorce (resulting in the unpaid debt of approximately $90,000.00) and irregularities in the Debtor's Schedules and Statement of Financial Affairs. He also asserts that the confirmation should be denied because the plan does not satisfy the "best interests of the creditors" test. 11 U.S.C. §1325(a)(4).

The court held an evidentiary hearing by video conference on January 28, 2022.[1] The Debtor was the only witness. Without objection, various exhibits were admitted into evidence. At the conclusion of the hearing, the court kept the record open to permit the admission of certain additional exhibits (i.e., certain bank records). The parties submitted memoranda of law in support of their respective positions, the last of which was filed on February 25, 2022.

For the reasons explained below, I find that the Debtor did not file this case in good faith as required by 11 U.S.C. §1325(a)(7). Therefore, confirmation of her chapter plan will be denied and I will hold a hearing to consider whether this case should be converted to chapter 7 or dismissed.

## II. FINDINGS OF FACT

Based on the credibility and demeanor of the trial witnesses, the plausibility of their testimony, the existence of corroborating circumstantial, testimonial or documentary evidence, and the totality of the evidentiary record presented at the trial, I make the following findings of fact.

---

[1]    The hearing has not been transcribed. In this Memorandum, I will cite to the unofficial audio record by reference to the recording's time stamp.

## The Debtor's Divorce Case

1. On April 20, 2018, Mr. Ames filed a divorce complaint with a claim for equitable

   distribution against the Debtor. (Audio at 23:30; Ex. Debtor-2).

2. On June 2, 2021, the Divorce Master issued her report, which states, <u>inter alia</u>:

   a.  the Debtor and Mr. Ames were married in 2006 and separated in 2016;

   b.  no children were born to the marriage;

   c.  both parties were 46 years old and high school graduates and have comparable
       health and educational backgrounds;

   d.  the marital assets total $191,822.00;

   e.  the value of the Debtor's Wawa stock ownership plan and her marital portion
       of her 401(k) Plan represented $176,000.00 of the $191,822.00 in total marital
       assets;

   f.  prior to the hearing, the Debtor dissipated the marital estate, leaving her with
       no source of funds to pay Mr. Ames his share of the marital estate.

   (Ex. Debtor-13).

3. The Divorce Master recommended that Mr. Ames's equitable distribution claim be

   resolved by the Debtor's payment of $94,338.00.  (<u>Id</u>.).


## Further Background Concerning the Debtor's Disposition of the Marital Assets

4. When the divorce complaint was filed, the Debtor owned an interest in a Wawa, Inc.

   employee stock ownership plan (the "Wawa Stock Plan"). (Audio at 26:20).

5. In November 2019, before the height of the COVID-19 pandemic, Wawa terminated the

   Debtor's employment. (Doc. # 73; Audio at 37:33).

6.  In 2019, the Debtor's gross wages from her Wawa employment was $27,278.00. (Doc. #72).

7.  On March 30, 2020, the Debtor liquidated the Wawa Stock Plan. (Audio at 27:28).

8.  The net distribution from the Wawa Stock Plan (after withholding for taxes), was $121,953.47 and was deposited in the Debtor's Citizens Bank checking account ending in 992-3 ("Citizens Account # 1"). (Audio at 30:40; Doc. # 72 at 2; Ex. Debtor-2).

9.  Also on March 30, 2020, the Debtor transferred $100,000.00 from her Citizens Account # 1 to her other checking account ending in 768-6 ("Citizens Account # 2").  (Audio at 31:08).

10. Citizens Account # 1 is linked to the Debtor's debit card, but Citizens Account # 2 is not. (Id.).[2]

11. Between November 2019, when the Debtor's Wawa employment terminated, and April or May 2020, when she began receiving unemployment compensation, the Debtor had no source of income other than: (a) some assistance she received from her father; and (b) social security income of about $1,200.00 per month received by her boyfriend, Lavdrim Rexhepi ("Rexhepi").  (Audio at 1:18:21; 1:19:31).

12. The Debtor collected a total of $26,214.00 in unemployment compensation in 2020. (Audio at 33:41, 1:17:27).

13. Before receiving her unemployment compensation, the Debtor used the Wawa Stock Plan money to pay her regular bills. (Audio at 1:20:07).

---

[2]      It appears that the Debtor used Citizens Account #2 as a *de facto* savings account and Citizens Account #1 as her operating account, transferring money from Account #2 to Account #1 as needed.

14. In January 2021, the Debtor cashed out her 401(k) account and received a net distribution of $17,439.57 that was credited to Citizens Account # 1.  (Doc. # 72; Audio at 40:14).

15. After receiving the 401(k) distribution, the Debtor transferred $16,000.00 from Citizens Account # 1 to Citizens Account # 2.  (Audio at 40:40).

16. The Debtor used her debit card on Citizens Account # 1 from March 2020 through December 2020, to make expenditures in the following approximate amounts:

    a.  fixing a roof ($6,000.00);

    b.  paying for a car ($10,000.00);

    c.  helping her boyfriend, Rexhepi, get a car ($14,000.00);[3]

    d.  helping her boyfriend pay his attorney's fees ($18,000.00);[4]

    e.  paying for a patio ($6,000.00);

    f.  buying furniture ($3,500.00); and

    g.  paying for a child's furniture ($2,000.00) and clothing (a couple of hundred dollars every couple of months).

(Audio at 1:04:55, 1:12:36, 1:14:05, 1:21:24).

### The Debtor's Bankruptcy Filing

17. Joseph Diorio, Esquire ("Diorio") initially represented the Debtor in this bankruptcy case.

18. The Debtor primarily relied on her divorce attorney, Nathan Snyder, to provide information and financial documentation to Diorio, but the Debtor also provided some information and documentation. (Audio at 54:34).

---

[3]    The Debtor and her boyfriend have been living together for about three years. (Audio at 1:19:04).

[4]    According to the Debtor's amended statement of financial affairs, the attorney's fees were for a child custody matter.  (Doc. # 61).

19. The Debtor signed the bankruptcy schedules (Ex. Debtor-9) without reading or fully
understanding the documents; relying heavily on her attorney's advice that the documents
were accurate. (Audio at 41:36; 42:39).

20. On December 16, 2022, Diorio withdrew his appearance and Michael W. Gallagher
("Gallagher") entered his appearance as the Debtor's counsel.  (Doc. #'s 43-44).

21.  The Debtor amended her bankruptcy schedules and statement of financial affairs
("SOFA") with Gallagher's assistance on January 26, 2022, two (2) days before the
confirmation hearing.  (Doc. #'s 61-63; Audio at 1:05:50).

22. In Amended Schedule E/F, the Debtor disclosed:

   a. one (1) priority debt, owed to the Pennsylvania Department of Revenue of
   $492.47;[5]

   b. nineteen (19) medical debts (but all owed to the same creditor, Doylestown
   Hospital), totaling approximately $8,300.00; a debt to Westlake Financial
   Services ("Westlake Financial") of $6,177.00 and the debt to Mr. Ames, listed
   at $90,000.00.

(Doc. # 58).

23. The scheduled debt to Westlake Financial had been paid off prior to the filing of the
bankruptcy petition. (See Doc. # 72).

24. The amended SOFA disclosed the previously undisclosed transfer of money to assist
Rexhepi in paying his attorney, but did not disclose the transfers of money to assist
Rexhepi in purchasing an automobile.  (Doc. # 61; Audio at 1:06:12).

25. The amended SOFA also disclosed unemployment compensation benefits the Debtor
received prepetition ($1,490.00 in 2019 and $26,200.00 in 2020).

---

[5]    In addition, the Debtor disclosed a general unsecured debt to the Pennsylvania Department of
Revenue of $169.61.

26. In her proposed chapter 13 plan, the Debtor proposes to pay $88.00 per month for 36

   months into the plan, for a base amount of $3,168.00, with an anticipated distribution of

   $492.47 to priority claimants and $2,358.72 to unsecured creditors.  (Doc. # 47).

## The Bank Statements

27. Contrary to her testimony, the Debtor made a payment of $6,321.87 to Westlake

   Financial from Citizens Account # 1 on April 2, 2020.  (Doc. # 72).

28. From February 27, 2020, through August 24, 2021, the Debtor used the Citizens Account

   # 1 debit card to make 565 purchases from Apple.com totaling $51,879.60. (See Mr.

   Ames' Ex. 4)

29. At the hearing before this Court on January 28, 2022, the Debtor made no reference to the

   purpose, or even the existence, of these Apple.com purchases when testifying in response

   to questions about the disposition of the income from the pension funds.


## III.   DISCUSSION

### A.  Good Faith and Sections 1325(a)(3), 1325(a)(7) and 1307(c) of the Bankruptcy Code

   The requirements for confirmation of a chapter 13 plan are set forth in 11 U.S.C.

§1325(a).

   At issue in this case are the requirements in §1325(a)(3), that the debtor's chapter 13 plan

be "proposed in good faith," and §1325(a)(7), that the debtor acted in "good faith" in filing the

bankruptcy petition.

   Section 1325(a)(3) has been in the Code since its enactment in 1978.  Section 1325(a)(7)

was added to the Code in 2005 by the Bankruptcy Abuse Prevention and Consumer Protection

Act of 2005, Pub.L. No. 109–8, 119 Stat. 23 (2005) ("BAPCPA"). In resolving this matter, I also

will discuss the interrelationship of these two (2) confirmation requirements of §1325 with

§1307(c), the provision governing dismissal or conversion of a chapter 13 case.


### 1. establishing good faith

The Third Circuit has not articulated standards for measuring good faith under either

§1325(a)(3) or (a)(7) for purposes of plan confirmation.  In 1996, however, prior to the

enactment of §1325(a)(7),[6] the court held that a lack of good faith in filing a bankruptcy case

constitutes "cause" for dismissal of a chapter 13 case under 11 U.S.C. §1307(c).  In re Lilley, 91

F.3d 491, 496 (3<sup>d</sup> Cir. 1996); see also In re Myers, 491 F.3d 120, 125 (3<sup>d</sup> Cir. 2007).

In Lilley, the court held that the good faith determination is best left to the discretion of

the bankruptcy court, to be made on a case-by-case basis in light of the totality of the

circumstances.  The court listed the following factors to be considered in evaluating good faith:

- the nature of the debt;

- the timing of the petition;

- how the debt arose;

- the debtor's motive in filing the petition;

- how the debtor's actions affected creditors;

- the debtor's treatment of creditors both before and after the petition was filed; and

---

[6]        Section 1307(c) of the Bankruptcy Code, 11 U.S.C. §1307(c), provides that, on request of a party
in interest, a court may convert or dismiss a case for "cause."  Section 1307(c) then lists nine (9) non-
exclusive examples of cause.  A lack of good faith in filing is not included among the nine (9) subsections
of §1307(c).

- whether the debtor has been forthcoming with the bankruptcy court and the creditors.[7]

Lilley, 91 F.3d at 496.

Lilley was not the first court to hold that cause for dismissal under §1307(c) includes a lack of good faith.[8]  Thus, it is fair to say that "courts have long concluded that "cause" under section 1307(c) includes the implied requirement that the chapter 13 case be filed in good faith." In re Soppick, 516 B.R. 733, 745 (Bankr. E.D. Pa. 2014).   Sometimes, courts boil down the concept of a good faith bankruptcy filing to whether the filing "is fundamentally fair in a manner

---

[7]      Other courts have devised various lists of considerations to be examined when evaluating "good faith."  See, e.g., Flygare v. Boulden, 709 F.2d 1344, 1347–48 (10th Cir. 1983) (eleven (11) factors); Matter of Love, 957 F.2d 1350, 1357 (7th Cir. 1992) (eight (8) factors); In re Tomasini, 339 B.R. 773, 782 (Bankr. D. Utah 2006) (seven (7) factors).

In a case decided under chapter 7, I identified five (5) primary factors for the court to consider:

1.   the debtor's (extravagant) lifestyle and ability to pay;

2.   the disproportionate impact that bankruptcy relief would have on one particular creditor, or only a few creditors, as compared to other creditors;

3.   forum shopping or efforts to manipulate the judicial process to thwart the orderly determination of a creditor claim pending in another court;

4.   prepetition fraudulent conduct to place assets beyond the reach of creditors or less than full and candid disclosure in the bankruptcy process itself;

5.   an end result, if bankruptcy relief is permitted, that is perceived to be fundamentally unfair or excessive.

Glunk, 342 B.R. at 734.

Most of these five (5) factors are helpful as well in evaluating the good faith of a chapter 13 filing.

[8]      In Lilley, the court followed the decisions in Seventh, Ninth and Tenth Circuits.  See Love, 957 F.2d at 1354; In re Eisen, 14 F.3d 469, 470 (9th Cir. 1994); In re Gier, 986 F.2d 1326, 1329–30 (10th Cir. 1993).  See also In re Jacobsen, 609 F.3d 647, 660 (5th Cir. 2010); In re Alt, 305 F.3d 413, 418 (6th Cir. 2002).

that complies with the spirit of the Bankruptcy Code's provisions." <u>In re Jensen</u>, 369 B.R. 210, 233 (Bankr. E.D. Pa. 2007).

The judicial consensus regarding the existence of an implied good faith filing requirement under §1307(c) naturally led courts to ponder the relationship between §1307(c) and the good faith plan proposal requirement under §1325(a)(3).  The enactment of §1325(a)(7) by BAPCPA in 2005, which added an express good faith filing requirement to the confirmation requirements of §1325(a), further complicated the process of construing the statute. As discussed below, this led to judicial discussion of the relationship between §1307(c) and §1325(a)(7).

Not surprisingly, there are a variety of judicial views on the relationship among these three (3) Code provisions. I will delve briefly into this statutory labyrinth because I may confirm the Debtor's plan only if it complies with both 11 U.S.C. §1325(a)(3) and §1325(a)(7).  To make that decision, I must identify the legal standards to be applied under each of those two (2) provisions — and, as I conclude below, doing so requires consideration of §1307(c).

## 2. good faith in filing a chapter 13 plan - §1325(a)(3)

Section 1325(a)(3), which requires that a chapter 13 plan be filed in good faith, primarily looks at debtor's conduct after the commencement of the case, <u>i.e.</u>,  case administration leading to the filing of the proposed chapter 13 plan.  <u>See</u> <u>In re Tomasini</u>, 339 B.R. 773, 779–80 (Bankr. D. Utah 2006); <u>see also</u> <u>In re Colston</u>, 539 B.R. 738, 750 (Bankr. W.D. Va. 2015) (the debtor's intent is central to determining good faith in the filing of a petition, but less so when considering confirmation of the Chapter 13 plan).  The §1325(a)(3) inquiry also largely turns on whether the debtor is attempting to pay the creditors to the reasonable limit of his or her ability and is treating his or her creditors fairly.

In this district, the best treatment on the subject of the contours of the good faith plan

proposal requirement under §1325(a)(3) is found in <u>Soppick</u>, where the court referenced three (3)

criteria — whether the debtor has:

> (1) stated his or her debts and expenses accurately;
>
> (2) made any fraudulent misrepresentations to mislead the bankruptcy court; AND
>
> (3) unfairly manipulated the Bankruptcy Code.

<u>Soppick</u>, 516 B.R. at 750–51.

The <u>Soppick</u> court elaborated on the third requirement by stating that "[s]ubsumed within

this third criterion of good faith — that there be no "unfair manipulation of the Code" — is the

notion of fairness and equity to creditors." <u>Id.</u> at 751 (citing <u>In re Cordes</u>, 147 B.R. 498, 504

(Bankr. D. Minn. 1992)). By this, the court meant that the Code requires that the debtor act in a

manner that is fundamentally fair to his or her creditors and consistent with the spirit of the

Bankruptcy Code's provisions. <u>Id.</u> (citing <u>Love</u>, 957 F.2d at 1357). Of course, it is this third

consideration that overlaps with the criteria used by courts in evaluating whether the bankruptcy

case itself was filed in good faith, as required by §1307(c). <u>See</u> <u>In re Gomery</u>, 523 B.R. 773, 785

(Bankr. W.D. Mich. 2015) ("The factors that are relevant to the good faith determination under

either §1325 or §1307(c) obviously overlap to some extent, and the 'same policy' of protecting

against 'an abuse of the provisions, purpose or spirit' of chapter 13 is embodied in both

evaluations") (citations omitted).[9] Therefore, evaluating the distinctions between good faith in

---

[9]    While not particularly pertinent in the present case, some courts have suggested that the burden of
proof differs in the two (2) sections, with the party seeking dismissal bearing the burden under §1307(c)
while the debtor bears the burden under §1325(a). <u>See</u> <u>In re Holman</u>, 567 B.R. 599, 610 n. 68 (Bankr. D.
Kan. 2017), <u>aff'd</u>, 594 B.R. 769 (D. Kan. 2018); <u>In re Demeza</u>, 567 B.R. 473, 477 (Bankr. M.D. Pa.), <u>aff'd</u>
<u>sub nom</u>. <u>Hackerman v. Demeza</u>, 576 B.R. 472 (M.D. Pa. 2017); <u>see also</u> <u>In re Durov</u>, 2017 WL 977026,
at *5 (Bankr. C.D. Ill. Mar. 10, 2017) (discussing but not deciding the issue).

filing a chapter 13 plan, as required by §1325(a)(3), and good faith in filing a bankruptcy case
(under sections 1307(c) and 1325(a)(7)) warrants discussion.

To begin, perhaps the most obvious difference between §§1325(a)(3) and (a)(7) is
temporal.  Good faith in filing a case (§1325(a)(7)) evaluates the debtor's conduct as of the
commencement of the case whereas good faith in filing a plan (§1325(a)(3)) considers the time
period after filing a case.

A second distinction might be the focus of the good faith inquiry under each subsection
of §1325.  As the court stated in <u>In re Powers</u>, 554 B.R. 41 (Bankr. N.D.N.Y. 2016):

> Section 1325(a)(3) tests the reasonableness of the plan and the sincerity of the
> debtor with respect to that particular plan; § 1325(a)(7) tests whether the filing is
> fundamentally fair and in a manner that complies with the spirit of the Code.

<u>Id.</u> at 59.

Stated slightly differently, while the *good faith filing the case* question under §1325(a)(7)
and §1307(c) is broader  —  in focusing on whether the bankruptcy filing itself and all its
consequences are fundamentally fair to creditors  —  the *good faith in filing a plan* requirement
looks squarely at the debtor's post-filing conduct and the terms of the proposed plan (including
its treatment of creditors, the likelihood that the debtor can perform and the allocation of the
risks resulting from failure to complete the plan).  <u>See</u> <u>In re Garzon</u>, 2018 WL 6287986, at *3
(Bankr. N.D. Ill. Dec. 3, 2018); <u>see also</u> <u>In re Tomer</u>, 2009 WL 2029798, at *5 (W.D. Va. July 2,
2009) (good faith in filing a petition is separate and distinct from the concept of good faith
required in connection with proposing a plan); <u>In re Clayton</u>, 2000 WL 33673749, at *5 (Bankr.
M.D. N.C. Dec. 4, 2000) (the standard for good faith for dismissal under § 1307(c) is similar but

not precisely the same as the standard of good faith with respect to the plan under §

1325(a)(3)).[10]

One might characterize the distinction between good faith in the filing a bankruptcy case

and good faith in proposing a chapter 13 plan as a permeable membrane.  As one (1) court

observed,

> The focus of § 1325(a)(3) should be on the facts and behavior relevant to the plan,
> more so than the prepetition facts and behavior relevant to the filing of the
> petition. However, even the prepetition behavior can be relevant to the totality of
> the circumstances in assessing the good faith of the plan under § 1325(a)(3).

In re Hoskins, 590 B.R. 843, 846 (Bankr. S.D. Ind. 2018) (citation omitted).

Conversely, factors such as the debtor's sincerity, potential for future earning, the

circumstances under which the debts were incurred, and the amount of payment offered by the

debtor may also be relevant in determining whether a chapter 13 case was filed in good faith.

See Gomery, 523 B.R. at 784.


### 3. good faith in filing a case - §1325(a)(7)

Turning to the good faith filing requirement under §1325(a)(7), I consider whether there

is any difference between that section and the good faith filing requirement under §1307(c).

---

[10]      Thus, perhaps some courts have "painted with too broad a brush," in suggesting that the good
faith standards of §1307(c) apply as well under §1325(a).  See In re Armstrong, 303 B.R. 213, 221
(B.A.P. 10th Cir. 2004); In re Blackmon, 628 B.R. 804, 809 n.6 (Bankr. D.S.C. 2021); In re Holman, 567
B.R. 599, 610 n.68 (Bankr. D. Kan. 2017), aff'd, 594 B.R. 769 (D. Kan. 2018); Demeza, 567 B.R. at 477;
In re Lancaster, 280 B.R. 468, 474 (Bankr. W.D. Mo. 2002); In re Huerta, 137 B.R. 356, 367 (Bankr.
C.D. Cal. 1992); see also Jensen, 369 B.R. at 232-33 (observing that courts have employed the Lilley
good faith standards derived from §1307(c) in cases applying §1325(a)(3)).

In a case from this district decided in 2009, In re Manno, 2009 WL 236844 (Bankr. E.D.

Pa. Jan. 30, 2009), Judge Fox described the range of judicial answers to the question above,

(while concluding that it was unnecessary answer it):

> At least one court has implied that the obligation of a chapter 13 debtor to
> commence a chapter 13 case in good faith now resides in section 1325(a)(7)
> rather than section 1307(c).  Another recent decision applied section 1325(a)(7) to
> deny confirmation, but concluded that dismissal must be based upon the
> traditional bad faith analysis implied in section 1307(c).  Still another recent
> decision concluded that section 1325(a)(7) appears to be nothing more than a
> codification of the long-standing judge-made rule and a corollary of § 1307(c).
> Yet another decision treats section 1325(a)(7) as an additional statutory basis to
> dismiss a bad faith chapter 13 filing.
>
> One commentator has opined that the addition of section 1325(a)(7) simply
> evidences congressional ratification of decisions, such as In re Lilley, imposing a
> good faith filing requirement in all chapter 13 cases.  Another commentator
> interprets this statutory provision as implying that a lack of good faith filing
> means that denial of confirmation, rather than dismissal, is the appropriate way to
> prevent such conduct.

Id. at *7 n.9 (citations and quotations omitted); see also Powers, 554 B.R. at 60–61 (also

surveying and collecting cases).

The Manno court further opined:

> Although the issue of confirmation is not before me, I note that if a lack of good
> faith in filing a chapter 13 petition mandates a denial of confirmation, it would
> appear that this defect would be irremediable. If so, a chapter 13 case in which the
> debtor is unable to confirm any plan warrants dismissal under section 1307(c).

2009 WL 236844 at *7 n.9.  Perhaps consistent with the dictum in Manno, a number of courts

have stated that §1325(a)(7) and §1307(c) have the same good faith standard. See In re Cole, 548

B.R. 132, 150 (Bankr. E.D. Va. 2016); In re Trainor, 2014 WL 7338901, at *3 (Bankr. S.D. Ind.

Dec. 22, 2014); In re Dahlgren, 418 B.R. 852, 857 (Bankr. D. N.J. 2009).

By comparison, in <u>Powers,</u> a thoughtful opinion from the Northern District of New York,

the bankruptcy court drew a distinction between a "lack of good faith" under §1325(a)(7) and

"bad faith" under §1307(c), reasoning as follows:

> For purposes of § 1325(a)(7), however, this Court does not favor the application
> of either the § 1325(a)(3) or § 1307(c) tests for the reason that these are three
> independent statutory provisions, and each section serves a separate and distinct
> purpose. . . .  Because Congress purposefully added § 1325(a)(7) to the Code in
> 2005, in this Court's view, § 1325(a)(7) must serve a purpose different from
> either § 1325(a)(3) or § 1307(c).
>
> . . .
>
> [T]he court can determine that a Chapter 13 petition is not filed in good faith
> without having to find that the debtor is acting in bad faith (dishonesty of belief or
> purpose). **While § 1325(a)(7) warrants denial of confirmation when the action
> of the debtor in filing the petition is not in good faith,"  § 1307(c) warrants
> conversion or dismissal "for cause" only**. . .  where the creditor or record
> demonstrate actual indicum of bad faith, not merely a lack of good faith.

554 B.R. at 59-62 (quotations and citations omitted) (emphasis supplied); <u>accord</u> <u>In re Gutierrez</u>,

633 B.R. 768, 802 (Bankr. S.D. Tex. 2021); <u>see also</u> <u>In re Ellsworth</u>, 455 B.R. 904, 918–19

(B.A.P. 9th Cir. 2011) (because dismissal is a harsher remedy than denial of plan confirmation,

the showing of bad faith required for dismissal should be greater than that necessary for denial of

confirmation) (citing Richard Levin & Henry J. Sommer, 8 <u>Collier on Bankruptcy</u> ¶ 1307.04[10]

(16th ed. 2011).

Thus, whereas the <u>Manno</u> court suggested in dictum that a finding adverse to the debtor

under §1325(a)(7) likely warrants dismissal under §1307(c), the <u>Powers</u> court concluded that

there are different levels of a lack of good faith such that a court may find that a case was not

filed in good faith for purposes of §1325(a)(7) (requiring denial of confirmation of the debtor's

proposed chapter 13 plan), but was filed in good faith for purposes of §1307(c) (thereby **<u>not</u>**

requiring dismissal of the case).

Perhaps as a corollary to the analysis in <u>Powers</u>, some courts, have stated that, due to the different consequences resulting from a finding of a lack of good faith under the two (2) provisions (<u>i.e.</u>, dismissal under §1307(c) as opposed to denial of confirmation under §1325(a)(7)), courts should be more reluctant to make a finding adverse to the debtor under §1307(c) as compared to §1325(a)(7).   <u>Love</u>, 957 F.2d at 1356; <u>Trainor</u>, 2014 WL 7338901, at *3; <u>In re McDonald</u>, 508 B.R. 187, 205 n.80 (Bankr. D. Colo. 2014); <u>In re Hall</u>, 346 B.R. 420, 426 (Bankr. W.D. Ky. 2006).

Respectfully, I find the debate whether the good faith standards of §1325(a)(7) and §1307(c) differ largely beside the point.  The good faith filing requirement "is an 'amorphous notion' that is both flexible and fact-specific." <u>Gomery</u>, 523 B.R. at 784. Under both §1307(c) or §1325(a)(7), a court evaluating the good faith of a bankruptcy filing will consider the totality of the circumstances and therefore, may look to any relevant consideration.  <u>See, e.g.</u>, <u>In re Zizza</u>, 500 B.R. 288 (B.A.P. 1st Cir. 2013) (inquiry into whether Chapter 13 debtor filed his or her petition in good faith is a fact-intensive determination, and the factors considered vary case to case).  Attempts to fine tune the distinction between the two (2) provisions may be akin to trying to hold water in one's hand.  It may be enough to say that the standards articulated in <u>Lilley</u> represent a good starting point for evaluating good faith under both §1307(c) and §1325(a)(7) and can be supplemented by other relevant concerns depending upon the facts of the case.

Thus, I have difficulty accepting the <u>Powers</u> court's view that §1325(a)(7) and §1307(c) involve different levels of good faith.  I recognize that the difference in the remedy provided in the two (2) sections for lack of good faith might appear to warrant different standards.  But I find it unworkable to develop a jurisprudence that distinguishes between a "lack of good faith" in filing the bankruptcy case itself (which will bar confirmation of a plan) from the "lack of good

faith" in filing the bankruptcy case (or, as the <u>Powers</u> court calls it, "bad faith") that requires dismissal of the case.  The proposed distinction between a bad faith filing warranting dismissal of the case and a case filing that lacks good faith requiring only denial of confirmation of the debtor's proposed chapter 13 plan strikes me as so subtle as to be standard-less.

Further, I do not perceive a distinction between the statutory confirmation requirement in §1325(a)(7) requiring that "action of the debtor in filing the petition was in good faith" and the standards developed by the case law for establishing cause for dismissal under §1307(c) for lack of good faith.  Simply put, I see no difference between the two (2) concepts.  A case has been filed in good faith or it has not.  Thus, I join the courts that have concluded that, in enacting §1325(a)(7), Congress incorporated into that provision the good faith filing standards of §1307(c).

Based on this reasoning, I also agree with the dictum in <u>Manno</u> that a finding of a lack of good faith under §1325(a)(7) is irremediable  — <u>i.e.</u>,  a finding of a lack of good faith under §1325(a)(7) also establishes cause for dismissal (or conversion) of the case under §1307(c).

I acknowledge that this conclusion is subject to the critique that it possibly renders §1325(a)(7) surplusage, certainly a disfavored statutory construction.  But considering the mandatory nature of the confirmation requirements of 11 U.S.C. §1325(a), <u>see</u>  <u>U.S. Aid Funds, Inc. v. Espinosa</u>, 559 U.S. 260, 276-77 (2010), like the <u>Manno</u> court, I do not see how a chapter 13 debtor can ever confirm a plan after the court finds the debtor has not satisfied §1325(a)(7).  If no plan can be confirmed, there is no bankruptcy purpose to the chapter 13 case.

Of course, a debtor's failure to satisfy §1307(a)(7) does not necessarily mean that the case must be dismissed.  It is possible that a chapter 13 filing lacking good faith would not lack good faith under chapter 7 and, in any event, the debtor's creditors might prefer conversion over

dismissal.  The process of determining the future of a chapter 13 case in which no plan can be

confirmed is already found in §1307(c).  Thus, try as I might, I cannot find any meaning in

§1325(a)(7) that is independent of §1307(c).[11]

### 4. other applicable legal principles

I must put this entire discussion in proper perspective before applying the law to the facts.

Denying a debtor the relief available under the Bankruptcy Code based on a lack of good

faith is a narrow doctrine.  As I explained last year in In re Walker, 2021 WL 1732592 (Bankr.

E.D. Pa. Apr. 30, 2021):

> Whether at the initial filing stage or at confirmation, a finding of a lack of good
> faith serves as a general bar to the relief the Bankruptcy Code offers. In these
> contexts, courts generally have agreed that the good faith doctrine is a narrow
> one.
>
> There is good reason for a narrow application of this statutory provision.
>
> [T]he good faith inquiry may come into play only if a debtor has satisfied the
> other applicable conditions set by statute for obtaining bankruptcy relief. Thus,
> the good faith requirement serves as a final check, or a "catch-all" to prevent
> misuse of the bankruptcy system.
>
> Several courts have recognized that a robust application of the good faith doctrine
> creates a risk that the court's analysis will lapse into an inquiry, that may clothe
> subjective moral judgments with the force of law.  Further, a broad application of
> the good faith requirement also would create an undue risk of judicial usurpation
> of the legislative power to determine the scope of and eligibility for [bankruptcy]
> relief.
>
> Consequently, denial of bankruptcy relief based on a lack of good faith should be
> confined carefully and is generally utilized only in egregious cases.

---

[11]    11 U.S.C. §1325(a)(7) was added to the Code by BAPCPA.  I would not be the first bankruptcy
judge to point out that the legislation had substantial drafting problems.  See, e.g., In re Dumont, 581 F.3d
1104, 1110 n.11 (9th Cir. 2009); In re Miller, 570 F.3d 633, 639 (5th Cir. 2009).

Id. at *16-17 (quotations and citations omitted); see also In re Tamecki, 229 F.3d 205, 207-08 (3ᵈ Cir. 2000).

      Moreover, evaluating the Debtor's good faith requires consideration of multiple factors and the totality of the circumstances.  Application of any multi-factor totality of the circumstances standard is not a mechanical or mathematical exercise. Not all of the factors may be relevant in a particular case.  The factors that are relevant may not be entitled to equal weight. The considerations employed by a court in making a decision are simply a guide to the required inquiry.  The exercise of the court's discretion requires a thoughtful, complex analysis and determination of what makes good sense in the totality of the circumstances.  In re Kennedy, 2013 WL 5230026, at *1 n.** (Bankr. E.D. Pa. Sept. 9, 2013).

      With these principles in mind, I consider the good faith objection to confirmation of the Debtor's chapter 13 plan in this case.

### B.  The Debtor's Case Was Not Filed In Good Faith as Required by 11 U.S.C. §1327(a)(7)

      I begin (and end) with consideration of the good faith of the Debtor's filing of this case under §1325(a)(7).  I will not discuss §1325(a)(3) due to the greater consequences of a finding of a lack of good faith under §1325(a)(7) as compared to §1325(a)(3).  Nor need I decide whether the plan does not satisfy the "best interests of the creditors" test, 11 U.S.C. §1325(a)(4).

### 1.  Mr. Ames' arguments

      Mr. Ames looks to the Debtor's conduct, both prepetition and postpetition, in support of his argument that the Debtor has not acted in good faith.

Mr. Ames understandably depicts the Debtor's prepetition dissipation of the distributions she received from the Wawa Stock Plan and her 401(k) Plan as serious prepetition misconduct insofar she misappropriated monies in which Mr. Ames had a property interest.  See In re Bennett, 175 B.R. 181 (Bankr. E.D. Pa. 1994) (after a divorce is filed, a spouse's right to equitable distribution of marital property is a property interest); accord Urmann v. Walsh, 523 B.R. 472, 478 (W.D. Pa. 2014).

Mr. Ames then argues that the Debtor's lack of good faith continued in her postpetition conduct, pointing to the following

- her initial failure to disclose in her SOFA the roughly $32,000.00 in prepetition transfers for the benefit of Rexhepi;

- in her amended SOFA, her failure to disclose the transfer of money to assist Rexhepi in purchasing an automobile;

- her initial failure to disclose in her SOFA the unemployment compensation benefits she received ($1,490.00 in 2019 and $26,200.00 in 2020);

- her listing in Schedule E/F of a car loan debt to Westlake Financial that was paid off prepetition with the distributions received from the Wawa Stock Plan and/or the 401(k) Plan;

- after acknowledging at the confirmation hearing that the Westlake Financial debt had been paid prepetition, her testimony that her father, rather than she, made the payment; and

- her failure to provide any explanation for the 565 purchases from Apple.com totaling $51,879.60.

In short, Mr. Ames characterizes the bankruptcy filing as an abuse of the bankruptcy system.  As he perceives it, not only does the debt to him arise from prepetition conduct that would render the debt nondischargeable in chapter 7, but the Debtor also has failed to make the complete and accurate disclosure of her financial affairs required in chapter 13.  Mr. Ames disputes that the Debtor's failure to read her bankruptcy schedules and SOFA before signing

them provides justification for the failure to make accurate disclosures, characterizing the

explanation as "playing ostrich and burying . . . her head . . . in the sand, disclaim[ing] all

responsibility for statements which . . . she had made under oath."  (Debtor's Mem. at 8)

(quoting In re Sousa, 2008 WL 302391, at *8 (Bankr. D. N.J. Jan. 30, 2008)).


### 2.  the court's analysis

I analyze the issue somewhat differently than Mr. Ames, but I agree that the Debtor has

not established that her action in filing this chapter 13 case was in good faith, as required by 11

U.S.C. §1325(a)(7).

The initial, and perhaps most salient, aspects of this case are the nature and origin of the

debt along with the Debtor's total debt structure.  Not only did the Debtor's (by far) most

substantial debt arise from conduct that, at a minimum, is in the nature of a misappropriation, in

any event, there is no doubt that the debt would be nondischargeable under chapter 7.  See 11

U.S.C. §523(a)(15) (debt owed to spouse that was incurred by the debtor in the course of a

divorce is excepted from discharge).

Further, the Debtor has only one (1) other creditor (Doylestown Hospital) to whom she

owes a relatively modest amount of money (approximately $8,300.00), and the Debtor has not

suggested that this creditor engaged in prepetition collection efforts that caused her bankruptcy

filing.  Also conspicuous is the timing of the bankruptcy filing, coming less than two (2) months

after the Divorce Master issued her report.

Thus, the conclusion is inescapable that Mr. Ames was the "target" of this chapter 13

bankruptcy filing.

Case 21-12125-elf   Doc 75   Filed 06/17/22   Entered 06/17/22 10:50:58   Desc Main
Document     Page 22 of 25


That said, I emphasize that the fact that one large debt triggered a debtor's bankruptcy filing, even one that would be nondischargeable under chapter 7, by itself, is not necessarily outcome determinative on the issue of good faith.  As I have previously stated in the chapter 7 context, but equally applicable here:

> For a debtor's "debt structure" to take on bad faith significance when there is only one primary creditor, ordinarily there must be some other factor at play, such as prepetition machinations to avoid payment, transfer of assets beyond the reach of the main creditor or some undue interference with an orderly judicial process for resolution of the primary debt.

In re Glunk, 342 at 736.

Here, based on the record, I find "other factors at play."

Taken together, the nature of the prepetition debt, the timing of the bankruptcy case, the apparent sole purpose of the case as targeting Mr. Ames' claim and the substantial prepetition transfers for the benefit of Rexhepi may or may not have been sufficient to support a finding of a lack of good faith.  But when the failure to make full disclosure in the bankruptcy case is added to the picture, the case is made for a finding that this case was not filed in good faith

To be clear, with respect to the Debtor's schedules and SOFA, the failure to disclose the prepetition transfer for Rexhepi's benefit and, to somewhat of a lesser degree, the scheduling of the non-existent Westlake Financial debt are troubling.  But when I add to the equation the unexplained, 565 purchases from Apple.com totaling $51,879.60, any doubt regarding the Debtor's good faith must be resolved against her.

Viewed through the prism of the Lilley factors, the nature of her debt, the timing of her filing, her treatment of her main creditor (i.e., a modest payment over three (3) years, likely to be under $3,000.00 on a debt in excess of $90,000.00) and her lack of complete disclosure in the

22

bankruptcy case dictate the conclusion that the Debtor has failed to meet her burden of

establishing her good faith under 11 U.S.C. §1325(a)(7).


## IV.  CONCLUSION

For the reasons stated above, I will enter an order denying confirmation of the Debtor's

chapter 13 plan.

In addition, based on my determination that the adverse finding under 11 U.S.C.

§1325(a)(7) precludes confirmation of any chapter 13 plan, and that the future of this case is best

determined under 11 U.S.C. §1307(c), I will schedule a hearing to determine whether this case

should be dismissed or converted.

Finally while my decision in the matter is firm, I would be remiss if I did not state the

existence of some doubt in my mind regarding the outcome here.  I have some continuing doubt

whether the Debtor was attempting to abuse the bankruptcy system in a conscious way in filing

this bankruptcy case.  My doubt derives, in part, from my observation of the Debtor in her

testimony.

Ordinarily, my decisions regarding the credibility of a witness are grounded in the

content of the testimony, rather than nonverbal cues conveyed through the witness' behavior and

demeanor on the witness stand.  I find use of the latter type of information somewhat unreliable.

Cf. In re Pearsall, 2016 WL 3976479, at *1 (Bankr. W.D. Pa. July 19, 2016) (assessing "the

deportment, demeanor and attitude of the witnesses" in making credibility determinations).

In this case however, there was a significant disconnect between the two (2) types of

information available to me as factfinder.

To be more specific, I perceived the Debtor as a credible witness when she testified that she relied on her attorneys in this bankruptcy case.  Given her educational and employment experience, she presented as an extremely legally unsophisticated individual.  Thus, her testimony that she signed her bankruptcy papers without reading them had the ring of truth and, further, I am not sure that she had the ability to review the papers with a sufficiently critical eye to catch the kind of shortfalls in disclosure that have been raised in this case.  Despite these conclusions I have reached as factfinder, the outcome here has largely turned on the Debtor's shortcomings inside the bankruptcy process.

Overall, I am left with a strong suspicion that the Debtor may have been poorly served by all of her lawyers in this matter.

Starting with her divorce lawyer, while it may be obvious to divorce and bankruptcy lawyers, it is not intuitive to non-lawyers that a person's interests in pension plans and 401(k) Plans can be marital property and subject to equitable distribution in a divorce case.  Did the Debtor's divorce lawyer caution her in advance about taking a distribution and spending the proceeds of the Wawa Stock Plan and the 401(k) Plan?  Maybe, in which case, the Debtor bears responsibility for the actions that started her down the path of a lack of good faith.  But maybe not, in which case the entire case begins to take on a different hue.  In the absence of testimony on the subject, I will not speculate and draw any inference in the Debtor's favor.  But I do wonder.

As for the shortfalls in the initial bankruptcy schedules, based on my observation of the Debtor and my experience in observing the work product of her initial lawyer, I have reason to doubt that the lawyer questioned the Debtor adequately and drafted the bankruptcy disclosures with due care.  I am not surprised that the documents are replete with errors and omissions.

Finally, there are the unexplained Apple.com transactions.  These transactions were apparent on the face of the bank statements admitted into evidence at the hearing (rather than the bank statements admitted as supplemental exhibits).  They were available to the Debtor's counsel before the hearing.  The failure to provide some explanation as to the meaning and purpose of those transactions was material to my conclusion that the case was not filed in good faith.  It is hard to understand why the transactions were not addressed in some way at the hearing.

Perhaps the gaps described above have explanations that would not have helped the Debtor's case and the concerns I have expressed lack foundation.  Either way, for present purposes, it does not matter.  I must decide the cases before me on the record presented, and while, as factfinder, I have authority to "connect the dots" in an incomplete record — at least to some degree — I cannot decide this case based on mere intuition.  Accord In re Sage, 2022 WL 2155936, at *8 (Bankr. E.D. Pa. June 15, 2022) (court declining to make material finding of fact based solely on "personal experience and common sense" without an evidentiary basis in the record).  Here, the record supports my conclusion that the Debtor did not meet her burden of proving that she filed this chapter 13 bankruptcy case in good faith and that settles the matter.

An appropriate order follows.

**Date:  June 17, 2022**

**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**